United States Court of Appeals,

Fifth Circuit.

No. 91-7142.

John STEVENSON, Plaintiff-Appellee,

v.

TRW INC., Defendant-Appellant.

April 1, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before WILLIAMS, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

TRW Inc. is a credit-reporting firm that appeals a judgment against it for violations of the Fair Credit Reporting Act (15 U.S.C. §§ 1681-1681t). Following a bench trial, the district court awarded John M. Stevenson actual damages of $30,000 for mental anguish, punitive damages of $100,000, and attorney's fees of $20,700 for TRW Inc.'s negligent and willful violations of the Act. After carefully reviewing the record, we affirm the district court's findings of negligence and the award of actual damages and attorney's fees, but we reverse the finding of willfulness and vacate the award of punitive damages.

I. FACTS AND PRIOR PROCEEDINGS

TRW Inc. is one of the nation's largest credit reporting agencies. Subscribing companies report to TRW both the credit information they obtain when they grant credit to a consumer and the payment history of the consumer. TRW then compiles a credit report on the consumer to distribute to other subscribers from whom the consumer has requested credit.

John M. Stevenson is a 78-year-old real estate and securities investor. In late 1988 or early 1989, Stevenson began receiving numerous phone calls from bill collectors regarding arrearages in accounts which were not his. Stevenson first spoke with TRW's predecessor, Chilton's, to try to correct the problem. When TRW purchased Chilton's, Stevenson began calling TRW's office in Irving, Texas. In August 1989, Stevenson wrote TRW and obtained a copy of his credit report dated

September 6, 1989. He discovered many errors in the report. Some accounts belonged to another John Stevenson living in Arlington, Texas, and some appeared to belong to his estranged son, John Stevenson, Jr. In all, Stevenson disputed approximately sixteen accounts, seven inquiries, and much of the identifying information.

The reverse side of the credit report contained a printed notice describing how consumers could send a written dispute of the accuracy of their credit reports to the local TRW office. Stevenson, however, called TRW to register his complaint and then wrote TRW's president and CEO on October 6, 1989, requesting that his credit report be corrected. Stevenson's letter worked its way to TRW's consumer relations department by October 20, 1989, and on November 1, 1989, that office began its reinvestigation by sending Consumer Dispute Verification forms (CDVs) to the subscribers that had reported the disputed accounts. The CDVs ask subscribers to check whether the information they have about a consumer matches the information in TRW's credit report. Subscribers who receive CDVs typically have twenty to twenty-five working days to respond. If a subscriber fails to respond or indicates that TRW's account information is incorrect, TRW deletes the disputed information. Stevenson understood from TRW that the entire process should take from three to six weeks.

As a result of its initial investigation, TRW removed several of the disputed accounts from the report by November 30, 1989. TRW retained one of the remaining accounts on the report because the subscriber insisted that the account was Stevenson's. The others were still either pending or contained what TRW called "positive information." It also began to appear that Stevenson's estranged son had fraudulently obtained some of the disputed accounts by using Stevenson's social security number. This information led TRW to add a warning statement in December 1989, advising subscribers that Stevenson's identifying information had been used without his consent to obtain credit. Meanwhile, Stevenson paid TRW a fee and joined its Credentials Service, which allowed him to monitor his credit report as each entry was made. TRW finally completed its investigation on February 9, 1990. By then, TRW claimed that all disputed accounts containing "negative" credit information had been removed. Inaccurate information, however, either continued to appear on Stevenson's reports or was re-entered after TRW had deleted it.

Stevenson filed suit in Texas state court alleging both common-law libel and violations of the Fair Credit Reporting Act (FCRA). TRW removed the case to federal court. On October 2, 1991, the case was tried before the court without a jury. The district court gave judgment for Stevenson on the libel and FCRA claims. It made the following findings:

1. The evidence did not show a failure by TRW to maintain "reasonable procedures to assure maximum possible accuracy" of Stevenson's credit report. *See* 15 U.S.C. § 1681e(b).

2. TRW had negligently and willfully violated 15 U.S.C. § 1681i(a) by not promptly deleting information found upon investigation to be inaccurate or unverifiable.

3. TRW had negligently and willfully violated 15 U.S.C. § 1681i(d) by failing to provide sufficiently conspicuous notice of Stevenson's right to have his corrected credit report sent to creditors who had made inquiries.

4. TRW had libeled Stevenson by publishing false reports "with reckless disregard of whether [they were] false or not after Mr. Stevenson made known to [TRW] that the reports had inaccuracies in them."

The district court awarded Stevenson $1 nominal damages on the libel claim. Although the court found that Stevenson had suffered no out-of-pocket monetary losses, it found that Stevenson had suffered mental anguish and was entitled to actual damages of $30,000 and attorney's fees in the amount of $20,700. Finally, the court awarded Stevenson $100,000 in punitive damages for TRW's willful violations of FCRA. TRW has timely appealed.

## II. DISCUSSION

Congress enacted FCRA "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information...." 15 U.S.C. § 1681(b). To guard against the use of inaccurate or arbitrary information in evaluating an individual for credit, insurance, or employment, Congress further required that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom" a credit report relates. 15 U.S.C. § 1681e(b); Act of Oct. 26, 1970, Pub.L. No. 91-508, § 601, 1970 U.S.C.C.A.N. (84 Stat. 1130) 4394, 4415 (legislative history). A consumer reporting agency that negligently fails to comply with FCRA's requirements is liable for actual damages, costs,

and reasonable attorney's fees. 15 U.S.C. § 1681*o*. Willful noncompliance renders a consumer reporting agency additionally liable for punitive damages. 15 U.S.C. § 1681n.

Although the district court found that the evidence failed to show a violation of § 1681e(b) requiring reasonable procedures, it found that TRW violated other provisions of FCRA when it responded to Stevenson's complaints. On appeal TRW argues that the district court erred (1) in finding that TRW negligently and willfully violated FCRA by failing to delete promptly inaccurate or unverifiable entries on Stevenson's credit report, (2) in finding a negligent and willful violation of FCRA's requirement that TRW provide clear and conspicuous notice of Stevenson's rights, and (3) in awarding damages for mental anguish. TRW does not appeal the finding of libel.

Our standard of review is deferential to the district court. We uphold findings of fact unless we are left with the firm and definite conviction that they were "clearly erroneous," and we give due regard to the opportunity of the district court to judge the witnesses' credibility. FED.R.CIV.P. 52(a); *see also Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509, 513 (5th Cir.1982).

A. *Prompt Deletion under § 1681i(a)*

Consumers have the right to see their credit information and to dispute the accuracy or completeness of their credit reports. 15 U.S.C. §§ 1681g and 1681h. When it receives a complaint, a consumer reporting agency must reinvestigate the disputed information "within a reasonable period of time" and "promptly delete" credit information that has been found to be inaccurate or unverifiable. 15 U.S.C. § 1681i(a). The parties here stipulated that TRW began its reinvestigation within a reasonable period of time after receiving Stevenson's written dispute. Nevertheless, the court found that TRW had negligently and willfully violated § 1681i(a) by not deleting inaccurate and unverifiable information promptly and by allowing deleted information to reappear.

*1. Negligence*

Section 1681i(a) provides TRW a reasonable time to investigate and delete inaccurate information, and "[a]lthough consumer reporting agencies are able to reinvestigate most disputes within 30 days, a "reasonable time' for a particular reinvestigation may be shorter or longer depending on the circumstances of the dispute." FTC Commentary, 16 C.F.R. Pt. 600, App. at 367 (1992).

TRW contends that ten weeks was a reasonable time to complete the reinvestigation of Stevenson's complicated dispute, especially because many of the inaccurate accounts had been obtained fraudulently.

The record, however, contains evidence from which the district court could find that TRW did not delete unverifiable or inaccurate information promptly. First, TRW did not complete its reinvestigation until February 9, 1990, although TRW's subscribers were supposed to return the CDVs by December 4, 1989. Second, § 1681i(a) requires prompt deletion if the disputed information is inaccurate *or unverifiable.* If a subscriber did not return a CDV, TRW claims that it deleted the disputed information as unverifiable. Yet, some disputed accounts continued to appear on Stevenson's credit report for several weeks. One subscriber failed to return the CDV, but its account appeared on the report issued on February 9, 1990. Another subscriber returned its CDV by December 4, 1989, indicating that TRW's information was inaccurate, yet the information was not deleted until after February 9, 1990. Stevenson had disputed several incorrect accounts listed with one business, but those accounts appeared on his credit report as late as March 22, 1991. Third, Stevenson had disputed the entry of an account with Empire of America FSA, which reflected the repossession of a car it had been financing. Although TRW had deleted the entry by February 9, 1990, the entry reappeared in May 1990.

Allowing inaccurate information back onto a credit report after deleting it because it is inaccurate is negligent. *Morris v. Credit Bureau of Cincinnati, Inc.,* 563 F.Supp. 962, 968 (S.D.Ohio 1983). Additionally, in spite of the complexity of Stevenson's dispute, TRW contacted the subscribers only through the CDVs. Although testimony at trial revealed that TRW sometimes calls subscribers to verify information, it made no calls in Stevenson's case. *Compare Bryant v. TRW, Inc.,* 689 F.2d 72, 79 (6th Cir.1982) (holding that making two phone calls to merely confirm inaccurate date amounted to negligent preparation of a credit report). TRW relied solely on the CDVs despite the number of disputed accounts and the allegations of fraud. TRW also relied on the subscribers to tell TRW whether to delete information from Stevenson's report. In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of

information obtained from subscribers. *See Swoager v. Credit Bureau of Greater St. Petersburg, Fla.,* 608 F.Supp. 972, 976 (M.D.Fla.1985).

TRW argues in its defense that the reinvestigation was complicated by the accounts fraudulently obtained in Stevenson's name and based upon accurate information. TRW urged at trial, however, that where fraud has occurred, the consumer must resolve the problem with the creditor. TRW's only obligation, it urges, is to publish a "victim of fraud" statement at the end of a credit report if fraud has been established by the parties. This response by TRW to Stevenson's complaint falls short of § 1681i(a)'s mandate that the "*consumer reporting agency shall* within a reasonable period of time reinvestigate" and "promptly delete" inaccurate or unverifiable information (emphasis added). The statute places the burden of investigation squarely on TRW. We conclude that there was no clear error in the district court's finding of negligence in failure to meet the prompt deletion requirement.

*2. Willfulness*

Initially, the district court found that TRW had not willfully violated § 1681i(a). In its Memorandum Opinion issued the next day, however, the court without explanation changed its finding to declare that TRW had acted willfully and that part of the $100,000 punitive damages award was attributable to this violation. TRW argues that the district court's decision was clearly erroneous. We agree.

Section 1681n authorizes the court to award actual damages, punitive damages, and reasonable attorney's fees when the reporting agency has willfully failed to comply with any of FCRA's requirements. To be found in willful noncompliance, a defendant must have "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Pinner v. Schmidt,* 805 F.2d 1258, 1263 (5th Cir.1986), *cert. denied,* 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987). Although malice or evil motive is not necessary to satisfy § 1681n, there must have been a willful violation. *Fischl v. General Motors Acceptance Corp.,* 708 F.2d 143, 151 (5th Cir.1983); *Jones v. Credit Bureau of Huntington, Inc.,* 184 W.Va. 112, 121, 399 S.E.2d 694, 703 (1990).

Only defendants who engaged in "willful misrepresentations or concealments" have

committed a willful violation and are subject to punitive damages under § 1681n. *Pinner,* 805 F.2d at 1263. For example, punitive damages are proper when a consumer reporting agency concealed some or all of a credit report from a consumer. *Millstone v. O'Hanlon Reports, Inc.,* 528 F.2d 829, 834 (8th Cir.1976); *Collins v. Retail Credit Co.,* 410 F.Supp. 924, 931-32 (E.D.Mich.1976). In *Pinner,* however, we held that the consumer reporting agency had not acted willfully in noncompliance although it had failed to investigate adequately and failed to correct inaccurate information in the plaintiff's credit report. In *Morris v. Credit Bureau of Cincinnati, Inc.,* 563 F.Supp. 962, 969 (S.D.Ohio 1983), the court held there was no willful violation, although the credit bureau was negligent in allowing deleted information to reappear on the credit report. The bureau had exhibited no ill will toward the plaintiff and had acted to fix the problem. Likewise, TRW provided Stevenson's credit report on request, did not conceal information about his report, investigated the disputed accounts, and attempted to resolve the complaints.

TRW moved slowly in completing its investigation and was negligent in its compliance with the prompt deletion requirement. The record does not reveal, however, any intention to thwart consciously Stevenson's right to have inaccurate information removed promptly from his report. The district court's finding of willful noncompliance, we must conclude, was clearly erroneous.

B. *Clear and Conspicuous Notice*

The Fair Credit Reporting Act requires in § 1681(d) that, upon reinvestigation and deletion of inaccurate items from a credit report, consumer reporting agencies "shall, at the request of the consumer, furnish notification that the item has been deleted ... to any person specifically designated by the consumer who has ... within six months prior thereto received a consumer report ... which contained the deleted or disputed information." Because the burden rests with the consumer to request that updated reports be sent, § 1681i(d) also requires that "the consumer reporting agency shall *clearly and conspicuously* disclose to the consumer his rights to make such a request. Such disclosure shall be made at or prior to the time the information is deleted or the consumer's statement regarding the disputed information is received." (emphasis added).

The district court found that TRW had given Stevenson notice of his rights, but that it was

not conspicuous enough to satisfy the statute. TRW argues that the court's finding was clearly erroneous because there is no legal authority, either in the statute or from the Federal Trade Commission, to specify how conspicuous the required notice must be. There has been little litigation on this issue, and the Fifth Circuit has not spoken to it.

*1. Negligence*

On the first credit report that Stevenson received, the statement "See Reverse Side for Explanation & Instructions" is printed in red, boldface type and appears in the bottom right corner of each page. The required notice then appears in the instructions printed on the back of every page. The fourth paragraph of the instructions contains the notice and is printed in the same color and same type size as the other terms in that paragraph. Both paragraphs above and below are printed in larger, boldface type. The fourth paragraph reads: "It will take approximately 3 to 4 weeks to check the item you dispute. You will be sent the results of our checking. Upon your request, we will also send the results of our checking to any credit grantor listed as an inquiry on the report." Four blank lines then follow on which the consumer can list several credit grantors.

On the back of each page of the revised report that Stevenson received in February 1990, the first paragraph was printed in large, boldface type and stated: "In response to your request, the items which you disputed have been checked. This disclosure reflects the results of our checking. If you had requested, a copy of this disclosure was sent to the credit grantor(s) you designated." This latter statement, however, suggests that the time had passed for exercising the right provided by § 1681i(d). We therefore focus our review on the notice printed in the initial credit report.

Stevenson admitted that he read the back page of his first credit report. Because the notice appeared in the dispute resolution instructions on the back of Stevenson's first credit report, TRW maintains that he had actual notice. The district court agreed that Stevenson had been given notice; § 1681i(d), however, does not require notice only, but that it be clear and conspicuous.

The Fourth Circuit recently considered this question in an unpublished opinion. *Guimond v. Credit Bureau, Inc.,* 955 F.2d 41 (4th Cir.1992) (text in WESTLAW). In *Guimond,* the court reviewed a granting of summary judgment in favor of the credit bureau, CBI. Guimond claimed that

the notice, which appeared on the back of the credit report in "small but clear and readable type," did not clearly and conspicuously disclose his rights. Guimond argued that a triable issue existed that precluded summary judgment. The court disagreed and affirmed the summary judgment. In addition to the printed notice on the back of the credit report, a CBI representative had directed Guimond's attention to the statement, telling him it was a summary of his rights.

Although the notice in *Guimond* is similar to TRW's notice, the posture of the cases differs. First, Stevenson's case actually proceeded to trial. Second, unlike Guimond, Stevenson testified that no one at TRW informed him of his right to have corrected reports sent to his creditors. Third, TRW's notice does not appear in the agency's consumer information pamphlet, but appears in a single sentence within a paragraph on the back of the initial credit report. The notice is neither underlined nor boldface, although the paragraphs above and below are boldface. Additionally, the notice's type size is smaller than that of other information on the back of the report. Finally, the district court read the back of the credit report and had to ask counsel where the notice was.

While there has been little litigation over the meaning of the phrase "clear and conspicuous" in FCRA, the phrase is common in other federal and state commercial regulatory statutes, and there has been substantial litigation interpreting those words. For example, the Truth in Lending Act, 15 U.S.C. § 1632, uses language similar to FCRA's § 1681i(d) by requiring disclosures in credit transactions to be made "clearly and conspicuously, in accordance with regulations." The regulations also require clear and conspicuous disclosure. *See* 12 C.F.R. §§ 226.5(a) and 226.17(a) (1992) (part of Regulation Z).

In *Smith v. Chapman,* 436 F.Supp. 58, 63-64 (W.D.Tex.1977), *aff'd,* 614 F.2d 968 (5th Cir.1980), the trial court considered a retail installment contract to purchase a car and found that Chapman had violated the Truth in Lending Act. Chapman had not disclosed clearly and conspicuously that physical damage insurance was necessary. The insurance provision was printed on the back of the contract, not the front. The statement appeared in paragraph 11 "in the same size print and type as the rest of the writing on the reverse side." In reaching its conclusion, the trial court construed Regulation Z's disclosure requirements in light of the Uniform Commercial Code definition

of "conspicuous":

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals ... is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color.... Whether a term or clause is "conspicuous" or not is for decision by the court.

U.C.C. § 1-201(10) (1992). The comment to § 1-201(10) states that "the test is whether attention can reasonably be expected to be called to it." The court concluded that there was nothing about Chapman's insurance provision that would call anyone's attention to it.

The term "conspicuous" has been construed most frequently with the Uniform Commercial Code § 2-316(2), which requires that any exclusion or modification of the implied warranty of merchantability be conspicuous, and that any exclusion or modification of the implied warranty of fitness for a particular purpose be made in a conspicuous writing. A contract's warranty disclaimer satisfies the conspicuous requirement when it is printed in all capital letters, when it appears in a larger type than the terms around it, or when it is in a larger and boldface type. *See, e.g., H.B. Fuller Co. v. Kinetic Systems, Inc.,* 932 F.2d 681, 689 (7th Cir.1991) (applying Wisconsin law); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.,* 844 F.2d 1174, 1183 (5th Cir.1988) (applying Texas law); *Hunter v. Texas Instruments, Inc.,* 798 F.2d 299, 302-03 (8th Cir.1986) (applying Arkansas law); *Delhomme Indus., Inc. v. Houston Beechcraft, Inc.,* 669 F.2d 1049, 1061 (5th Cir.1982) (applying Kansas law); *FMC Fin. Corp. v. Murphree,* 632 F.2d 413, 419 (5th Cir.1980) (applying Illinois law); *Earman Oil Co., Inc. v. Burroughs Corp.,* 625 F.2d 1291, 1298 (5th Cir.1980) (applying Florida law). Likewise, a disclaimer in boldface type, printed in all capitals on the face of the warranty above the buyer's signature meets the definition of conspicuousness. *Klo-Zik Co. v. General Motors Corp.,* 677 F.Supp. 499, 508 (E.D.Tex.1987). A disclaimer is not conspicuous, however, when it is printed in small print on the back of the document, when it is the same size and typeface as the terms around it, or when it is not in boldface or capital lettering. *See, e.g., Lutz Farms v. Asgrow Seed Co.,* 948 F.2d 638, 646 (10th Cir.1991) (applying Colorado law); *Ford Motor Credit Co. v. Harper,* 671 F.2d 1117, 1122-23 (8th Cir.1982) (applying Arkansas law); *Holcomb v. Cessna Aircraft Co.,* 439 F.2d 1150, 1157-58 (5th Cir.) (applying Kansas law), *cert. denied,* 404 U.S. 827, 92 S.Ct. 62, 30 L.Ed.2d 56 (1971); *Boeing Airplane Co. v. O'Malley,* 329

F.2d 585, 593 (8th Cir.1964) (applying Pennsylvania law).

TRW's notice of the consumer's right to have corrected reports sent to creditors was printed in the same size type as the other terms in the same paragraph. The paragraphs around the notice appeared in larger, boldface type. Even if Stevenson read the back of his first credit report, there was nothing to draw his attention particularly to the statutory notice. We conclude that the district court did not err in finding that TRW negligently violated the notice requirement of § 1681i(d).

## 2. Willfulness

There is no evidence, however, to support the district court's finding of willful noncompliance. TRW sent Stevenson the same boilerplate form it sends everyone. The notice appears in a paragraph on dispute resolution procedures and is not hidden. There was no prior guidance to suggest that TRW's notice was insufficient, and we cannot conclude that TRW knowingly and intentionally obscured the notice in conscious disregard of consumers' rights. We reverse the finding of willful noncompliance and the award of punitive damages.

## C. *Mental Anguish*

Section 1681*o* authorizes a consumer to recover actual damages sustained from the consumer reporting agency's negligent violation of a requirement under FCRA. Actual damages include humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses. *Fischl v. General Motors Acceptance Corp.,* 708 F.2d 143, 151 (5th Cir.1983). Of course, such damages must be warranted by the evidence. *Pinner v. Schmidt,* 805 F.2d 1258, 1265 (5th Cir.1986), *cert. denied,* 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987). After reviewing the record, we hold that the district court did not err in finding that Stevenson had suffered mental anguish from TRW's violations of FCRA.

TRW maintains that most of Stevenson's distress was the result of the many calls he received from creditors of the fraudulently obtained accounts. TRW correctly questions the relevance of these creditors' calls to violations of FCRA. Nearly all of these calls occurred before Stevenson filed his written dispute and TRW began its reinvestigation. Only after that did the FCRA violations occur. Stevenson's distress because of creditors' calls arose before TRW's FCRA violations.

The record reveals evidence, however, that Stevenson suffered mental anguish over his lengthy dealings with TRW after he disputed his credit report. First, Stevenson testified that it was a "terrific shock" to him to discover his bad credit rating after maintaining a good credit reputation since 1932. Second, Stevenson was denied credit three times during TRW's reinvestigation: by Bloomingdale's, by Bank One, and by Gabbert's Furniture Company. Stevenson testified that he had to go "hat in hand" to the president of Bank One, who was a business associate and friend, to explain his problems with TRW. As a result, he obtained credit at Bank One. Third, Stevenson had to explain his credit woes to the president of the First City Bank in Colleyville when he opened an account there. With a new president at First City Bank, Stevenson had to explain his situation again. Despite the fact that he was ultimately able to obtain credit, Stevenson testified to experiencing "considerable embarrassment" from having to detail to business associates and creditors his problems with TRW. Finally, Stevenson spent a considerable amount of time since he first disputed his credit report trying to resolve his problems with TRW.

We have upheld awards of actual damages on the basis of similar evidence of mental distress. In *Pinner,* 805 F.2d at 1265, the consumer was awarded $25,000 for mental distress because of the humiliation and embarrassment resulting from three credit denials and from lengthy dealings with the credit bureau. The court did, however, order a remittitur from the original jury award of $100,000 mental distress damages. Another consumer received $10,000 because of humiliation and embarrassment suffered from three denials of credit and from the fact that the credit bureau took several months to correct the credit report's inaccuracies. *Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509, 513-14 (5th Cir.1982).

Other courts have made or upheld similar awards. In *Collins v. Retail Credit Co.,* 410 F.Supp. 924, 936 (E.D.Mich.1976), the court awarded a consumer $21,750 for embarrassment and humiliation. In *Morris v. Credit Bureau of Cincinnati, Inc.,* 563 F.Supp. 962, 969 (S.D.Ohio 1983), the consumer was awarded $10,000 for anguish and embarrassment even though, after he was denied credit, he explained the inaccuracies on his credit report and subsequently obtained credit. In *Bryant v. TRW, Inc.,* 487 F.Supp. 1234, 1242-43 (E.D.Mich.1980), the district court awarded a consumer

$8,000 for anguish resulting from denials of a mortgage due to inaccurate credit reports. The Sixth Circuit affirmed. 689 F.2d 72 (6th Cir.1982). Finally, in *Millstone v. O'Hanlon Reports, Inc.,* 528 F.2d 829, 834-35 (8th Cir.1976), the Eighth Circuit upheld an award of $2,500 for mental anguish after an insurer cancelled the consumer's policy because of an inaccurate credit report.

The district court was presented with evidence of mental distress arising from the large numbers of inaccuracies in Stevenson's credit report and from TRW's lengthy reinvestigation. Of particular significance is the tardy deletion of incorrect entries and the reappearance in the credit report of an earlier-deleted, improper entry. We find no clear error in the district court's award of mental anguish damages in the amount of $30,000.

D. *Attorney's Fees*

Section 1681*o* provides that a negligent defendant may be liable for attorney's fees. While the award of fees was part of the overall judgment which was appealed, TRW made no specific attack upon either the award of fees or the amount awarded. We find that the award of attorney's fees and the amount awarded were within the discretion of the district court.

### III. CONCLUSION

TRW negligently violated § 1681i(a) by taking an unreasonably long time to reinvestigate Stevenson's dispute and by failing to delete promptly the information found to be inaccurate or unverifiable. TRW also negligently violated § 1681i(d) by failing to disclose clearly and conspicuously to Stevenson his right to have corrected copies of his credit report sent to his creditors. The district court, however, erred in finding that TRW's violations were willful. We affirm the findings of negligence, reverse the findings of willfulness, and vacate the punitive damages award. The district court properly found that Stevenson had suffered humiliation and embarrassment from TRW's violations of FCRA. We affirm the award of $30,000 in actual damages based upon the finding of mental anguish. We also affirm the award of $20,700 in attorney's fees.

AFFIRMED IN PART, REVERSED IN PART AND RENDERED.