**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 93-1841

AMERICAN EAGLE INSURANCE COMPANY and MARTINAIRE, INC.,

Plaintiffs-Appellants,

VERSUS

UNITED TECHNOLOGIES CORPORATION and PRATT & WHITNEY-CANADA, LTD., Etc.

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

(February 24, 1995)

Before WIENER, EMILIO M. GARZA, and BENAVIDES, CIRCUIT JUDGES.

BENAVIDES, CIRCUIT JUDGE:

This appeal involves the application of Texas law to negligence, strict liability and breach of implied warranty claims brought in a diversity suit against an aircraft engine manufacturer and its parent organization. The district court granted summary judgment against Plaintiffs. We AFFIRM IN PART and REVERSE AND REMAND IN PART.

I.  Undisputed Facts

On February 28, 1985, Appellee Pratt & Whitney-Canada, Ltd. (a subsidiary of United Technologies Corporation, also an Appellee), manufactured and sold a PT-6 aircraft engine to the Cessna Aircraft Company. On May 29, 1985, after installing the engine in a Cessna Caravan Aircraft, Cessna sold the aircraft to the Federal Express Corporation, the first purchaser. On August 7, 1987, the fifth and last purchaser, Martinaire, Inc., acquired the aircraft.

On September 4, 1987, the airplane crashed. There were no personal injuries. However, there was damage to the aircraft and damage on the ground to property owned by a third party for which the Appellants, Martinaire, Inc. and American Eagle Insurance Company, became legally responsible. The aircraft was subsequently destroyed and sold for salvage.

A service policy between Federal Express and Pratt & Whitney-Canada, Ltd., disclaimed implied warranties, liability in tort and contract, and limited remedies to repair or replacement. The policy also contained an express warranty against defects in the engine. By its own terms, the warranty expired on May 29, 1986.

## II. Procedural History

On September 1, 1989, Plaintiffs/Appellants filed suit against Defendants/Appellees alleging negligence; strict product liability; breach of implied warranty under Chapter 2 of the Uniform Commercial Code; and breach of implied warranty under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.50(a) (Vernon 1987) ("DTPA"). The district court granted Appellees' Motion for Summary Judgment, dismissing all of Appellants' claims.

Appellants primarily contest the following conclusions of the district court: (1) there is no claim for negligence when the only damages are economic; (2) there is no claim for strict product liability when the only damage is to the product itself; and (3) there is no claim for breach of warranty because the four-year statute of limitations ran from the date of delivery to the original purchaser. With the exception of Appellants' claim of breach of implied warranty under the DTPA, we agree with the district court's conclusions.

### III. Negligence and Strict Product Liability

The first question is whether Texas recognizes a cause of action for negligence when the only loss is economic. This Circuit has already found that Texas does not recognize such a cause of action. In Arkwright-Boston Mfgrs. Mut. v. Westinghouse Elec., 844 F.2d 1174 (5th Cir. 1988), this Court held that Texas does not permit recovery under a negligence theory for economic loss resulting from damage to a defective product. Consequently, the district court properly granted summary judgment against Appellants on their negligence claim.

A related issue is whether Texas recognizes a cause of action for strict product liability when the damage is to the defective product itself. In Mid-Continent Aircraft Corp. v. Curry City Spraying Serv., Inc., 572 S.W.2d 308 (Tex. 1978), the Texas Supreme Court held that in transactions between a commercial seller and a commercial buyer, when no physical injury has occurred to persons or "other property," injury to the defective product itself is an

-3-

economic loss governed by the Uniform Commercial Code. In short, strict tort liability would not be applied when economic loss alone was asserted.

Given this situation, Appellants argue that damage to the hull of the aircraft caused by the defective engine is damage to "other property." In Mid-Continent, the defective component was a crankshaft gear bolt in an airplane's engine which caused the pilot to conduct an emergency landing, destroying the aircraft. While not specifically addressed, the court's opinion was premised on the idea that the entire aircraft was the defective product, rather than "other property" damaged by a defective engine or component part. This interpretation of Mid-Continent is supported by Shipco 2295, Inc. v. Avondale Shipyards, Inc., 825 F.2d 925 (5th Cir. 1987), cert. denied, 485 U.S. 1007 (1988). In Shipco, this Circuit rejected an argument that a vessel's defective steering mechanism caused damage to unrelated components in the same vessel or "other property." The controlling inquiry in Shipco was whether the parties bargained separately for individual components of the vessel. If they had, then the individual defective components making up the vessel could cause damage to the whole, allowing recovery under a strict product liability theory.

The summary judgment evidence shows that Appellants' claim was for the loss of the aircraft, not for physical injuries. There is no summary judgment evidence indicating Appellants bargained separately for the engine. It is likewise undisputed that the engine was installed in the aircraft prior to Appellants' purchase.

-4-

Once Appellees properly show the absence of evidence to support the Appellants' case, the burden shifts to the Appellants to demonstrate the existence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Here, the evidence shows that Pratt & Whitney-Canada, Ltd. manufactured and sold the engine to Cessna. The engine was subsequently installed into the aircraft by Cessna. The aircraft was then sold to Federal Express. The record also shows the aircraft's chain of title and history of ownership, with the ultimate purchase of the entire aircraft by Appellants. There is simply no evidence that the parties bargained separately for individual components of the aircraft. Consequently, the aircraft hull does not qualify as "other property" damaged by the defective engine component.

Appellants further argue that damage to the ground where the aircraft crashed constitutes "other property," allowing recovery under a strict product liability theory. Section 402A allows recovery for damages sustained as a result of an unreasonably dangerous product. See Restatement (Second) of Torts § 402A (1965).

Appellees correctly counter that the damage at the crash site must be damage to Appellants' "other property." Here, the ground damage occurred to a third-party's property for which the Appellants subsequently became legally responsible. In Signal Oil & Gas Co. v. Universal Oil Prods., 572 S.W.2d 320 (Tex. 1978), the Texas Supreme Court emphasized that the damage to "other property"

-5-

must be to the plaintiff's property to state a claim for strict product liability:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to <u>his property</u> is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to <u>his property</u>. . . .

<u>Signal Oil & Gas</u>, 572 S.W.2d at 325 (emphasis in original).

Appellants admitted that it owned no property, other than the aircraft, that was damaged as a result of the crash. Thus, the district court properly granted summary judgment on Appellants' strict product liability claim.

## IV. Breach of Warranty

The district court concluded that Appellants' claims for breach of express and implied warranty brought under the Uniform Commercial Code were barred by the four-year statute of limitations. Appellants do not contest that these claims were time barred. Rather, Appellants argue that the district court erred by dismissing their claim for breach of implied warranty brought under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.50(a) (Vernon 1987) ("DTPA").

While the summary judgment dismissed all of Appellants' claims, it failed to address, specifically, the claim for breach of implied warranty under the DTPA. Consequently, the first question is whether this Court should proceed to rule on the viability of this claim or remand to the district court for its determination of the issue.

As a matter of judicial economy, this Court may address an issue for the first time on appeal if additional factual development in the district court would not be necessary. The pertinent aspects of Appellees' summary judgment motion challenging Appellants' DTPA implied warranty claim include: (1) an application of the appropriate statute of limitations; and (2) an evaluation of the effectiveness of Appellees' written disclaimer of implied warranties.

The parties agree that the defective condition of the engine was discovered by Appellants on the date of the crash or September 4, 1987. A claim under the DTPA for breach of an implied warranty is governed by the discovery rule and a two-year limitations period. McAdams v. Capitol Prods. Corp., 810 S.W.2d 290 (Tex. App.--Fort Worth 1991, writ denied). Thus, under the DTPA, the limitations period begins to run when the breach is discovered. Here, the breach was discovered on September 4, 1987, and the suit was filed on September 1, 1989. The claim was brought within two years and is not time barred.

Regarding the second question, Appellees' disclaimer was contained in the original contract of sale.[1] A disclaimer that satisfies the "conspicuous" requirement of chapter 2 of the Uniform Commercial Code is likewise sufficient to disclaim any implied

---

[1] The portion of the original contract of sale containing the disclaimer is set out in an Appendix to this opinion. While it appears that this page does not constitute the entire written portion of the contract, it is the only page contained in the record.

warranties under the DTPA.  See Singleton v. La Coure, 712 S.W.2d 757 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.).

The issue whether a disclaimer is conspicuous is a question of law, which we review de novo.  See Cate v. Dover Corp., 790 S.W.2d 559, 560 (Tex. 1990); Allied Fin. Co. v. Rodriquez, 869 S.W.2d 567, 570 (Tex. App.--Corpus Christi 1993, n.w.h.); Ellmer v. Delaware Mini-Computer, 665 S.W.2d 158, 159-60 (Tex. App.--Dallas 1983, no writ).  The Texas Business and Commerce Code S 1.201 states:

> [a] term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.  A printed heading in capitals . . . is conspicuous.  Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color.  But in a telegram any stated term is "conspicuous."  Whether a term or clause is "conspicuous" or not is for decision by the court.

Comment 10 following this section states that this provision was intended to indicate some of the methods of making a term "attention-calling," but that the test is "whether attention can reasonably be expected to be called to it."

The Texas Supreme Court has interpreted section 1.201 and comment 10, declaring:

> Admittedly, an ambiguity is created by the requirement that disclaimer language be conspicuous to "a reasonable person against whom it is to operate."  Comment 10, however, clearly contemplated an objective standard, stating the test as "whether attention can reasonably be expected to be called to it."

Cate, 790 S.W.2d at 560.  The Texas Supreme Court then applied an objective standard of conspicuousness to the written warranty and went even further, disapproving other cases, such as Ellmer, that could be read as imposing a subjective standard.  Id. at 560-61.

Under an objective standard, the circumstances surrounding the transaction are not relevant to the issue of conspicuousness. Id. at 561. However, once a court determines that a disclaimer is not conspicuous under an objective standard, it may still give effect to the disclaimer if it is shown that the buyer had actual knowledge of the disclaimer. Id. In other words, actual knowledge of the disclaimer overrides the question of conspicuousness. Id.

In Texas, the courts examine the entire document when making their determination of whether a disclaimer is conspicuous. See, e.g., Cate, 790 S.W.2d at 560-61; Allied Fin., 869 S.W.2d at 570-71; Ellmer, 665 S.W.2d at 159. Appellees did not include the entire contract in their summary judgment evidence.

While it is true that the disclaimer paragraph is in boldface, Appellees go further and claim that "the boldface language is in contrasting 'type.'" This is not so. The disclaimer is in the identical type as that contained on the rest of the page.[2]

Nonetheless, because the question of the disclaimer's conspicuousness is gauged by a review of the entire contract and we do not have the entire contract before us, we are not in a position to evaluate whether the disclaimer is conspicuous as a matter of

---

[2] In making this statement, Appellees attempt to characterize their disclaimer in terms addressed (in a non-exclusive listing) by this Court in Stevenson v. Trw, Inc., 987 F.2d 288, 296 (5th Cir. 1993). In Stevenson, we suggested that a disclaimer of this nature may satisfy the conspicuousness requirement if it is printed in all capital letters, in larger type than the terms around it, or in larger and boldface type. Our Stevenson opinion does not imply that these examples constitute an exclusive list.

law. Certain factors, such as the length of the document, whether the disclaimer was on the front or back of the document, the extent to which other portions of the document were in boldface, and whether other portions of the document were in larger or contrasting type, could conceivably have a bearing on the conspicuousness issue.

The summary judgment evidence was not developed sufficiently to allow either this court or the district court to make a decision on the merits of Appellees' disclaimer contention. Consequently, the district court erred in granting summary judgment against Appellants on their claim of breach of implied warranty under the DTPA. This ruling, of course, does not preclude the district court's future consideration of this issue if properly presented.

Finally, Appellants argue that the district court erred in dismissing, on a separate ground, their claims against United Technologies Corporation. Appellees provided summary judgment evidence showing that United Technologies Corporation did not design, manufacture, warrant, sell or otherwise place in the stream of commerce the PT-6 aircraft engine. To hold United Technologies Corporation liable, Appellants rely solely on a logo on the engine service policy that contains, in part, the designation "United Technologies." However, the document does not mention United Technologies Corporation, referring only to Pratt & Whitney-Canada, Ltd.

Generally, there is no vicarious liability under Texas law if the parent and the subsidiary corporations are entirely separate

legal entities and there is no showing of fraud. See Lucas v. Texas Indus., Inc., 696 S.W.2d 372, 374 (Tex. 1984). Here, the existence of only a logo on the service policy does not create a material fact issue necessary for United Technologies Corporation to be held liable. Under these circumstances, the district court did not err by dismissing United Technologies Corporation.

We **AFFIRM** the summary judgment as it pertains to Appellants' claims based on negligence and strict product liability, and as it pertains to all claims against Appellee United Technologies Corporation. We **REVERSE** and **REMAND** the summary judgment in part, as it relates to Appellants' claim for breach of implied warranty under the DTPA against Appellee Pratt & Whitney-Canada, Ltd.