# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 22, 2025

Lyle W. Cayce
Clerk

No. 24-50193

Danielle Schultz,

*Plaintiff—Appellant*,

*versus*

HomeBridge Financial Services, Incorporated,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-863

_____

Before Elrod, *Chief Judge*, and Jones and Stewart, *Circuit Judges*.
Per Curiam:[*]

Danielle Schultz filed this action against HomeBridge for violations of the Fair Credit Reporting Act ("FCRA") and the Texas Debt Collection Act ("TDCA"). The district court properly dismissed the TDCA claims as time-barred, and Schultz has not pled sufficient facts to plausibly state a claim for a willful violation of the FCRA. However, Schultz has sufficiently

_____

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 24-50193

pled a plausible negligence claim under the FCRA. Accordingly, we AFFIRM the district court in part, and REVERSE and REMAND in part for further proceedings.

## I. Background

Schultz purchased a residential property in Arizona ("Arizona Property") in 2017 with a purchase money loan, to which HomeBridge was assigned as servicer after refinancing. Schultz made a timely first payment to HomeBridge for $1,254.77, due on August 1, 2020. However, for "reasons unknown," the payment was not processed. To avoid a late payment mark, Schultz submitted a second payment that was successfully processed. Shortly thereafter, the first payment processed as well, resulting in the posting of two August payments to Schultz's account.

When Schultz contacted HomeBridge to reverse one of the payments, HomeBridge explained that, while it could not reverse a processed payment, it could send a refund check within fifteen days. Either unwilling or unable to wait, Schultz disputed one of the payments with her bank instead. HomeBridge was allegedly notified of this and "advised a stop payment would be placed on the . . . refund check." Even so, it appears that Schultz's bank dispute and HomeBridge's refund check affected different payments, and Schultz's account reflected that no payments were made in August 2020.

When Schultz discovered this, she called HomeBridge and provided "proof of payment," as she had yet to receive a refund from HomeBridge for one of the duplicate August payments. Before ending the call, Schultz also made a payment for September, but HomeBridge's system applied that to her "overdue" August payment instead. HomeBridge then reported the September payment as overdue. In subsequent conversations, HomeBridge allegedly told Schultz that this payment issue would be "taken care of," and that the credit reporting would "get corrected."

No. 24-50193

Amid this payment and refund fiasco, Schultz contracted to purchase a new residence in Texas ("Texas Property"), which required a $5,000 earnest money deposit. In connection with a sale of the Arizona Property, Schultz paid off the HomeBridge-serviced mortgage on October 8, 2020, including the amount still reported as due from the "missing" payment.

While finalizing a contract for the Texas Property, Schultz advised HomeBridge that she may "lose her new home if the [credit reporting] issues were not resolved." HomeBridge allegedly "confirmed during the call that Ms. Schultz was never 30 days late," and that it would take steps to notify her new lender. On November 3, 2020, however, Schultz's loan application was denied. That same day, HomeBridge issued a refund check to Schultz for $1,254.77, one monthly payment.

On January 10, 2021, Schultz filed a written dispute with credit reporting companies Equifax, Experian, and Trans Union, LLC. HomeBridge ultimately updated its reporting to show that the September 2020 payment was timely, but it continued to report a "30 day delinquency" for October. In March 2021, Schultz purchased a different home in Texas.

On September 28, 2021, Schultz sued HomeBridge for violations of the FCRA. Schultz amended her complaint on February 17, 2023, to add a claim for violations of the TDCA.[1] HomeBridge filed a 12(b)(6) motion to dismiss. FED. R. CIV. P. 12(b)(6). The district court granted the motion, finding that the TDCA claims were time-barred and did not relate back, and

---

[1] Schultz's initial complaint also listed Equifax, Experian, and Trans Union as defendants and alleged a violation of the Real Estate Settlement Procedures Act ("RESPA"). In addition to adding the TDCA claim, the amended complaint removed Equifax, Experience, and Trans Union as defendants and dropped the RESPA claim against HomeBridge.

that the FCRA claims did not plausibly plead a willful violation or actual damages. Schultz timely appealed.

## II. Standard of Review

"We review de novo a district court's dismissal under Rule 12(b)(6), accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs. To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead enough facts to state a claim for relief that is plausible on its face." *Warren v. Chesapeake Expl., L.L.C.*, 759 F.3d 413, 415 (5th Cir. 2014) (citations omitted).

## III. Discussion

### A. Fair Credit Reporting Act

"Congress enacted the FCRA to ensure fair and accurate credit reporting that protects consumers while meeting the needs of commerce." *Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 567 (5th Cir. 2020). When a credit reporting agency notifies a "furnisher" of credit information of a consumer dispute, the furnisher must "conduct an investigation," "report the results of the investigation," and "modify . . . delete . . . or . . . permanently block" any inaccuracies. 15 U.S.C. § 1681s-2(b)(1)(A)–(E). The "FCRA allows a plaintiff injured by a negligent reporting violation to . . . recover . . . actual damages," and actual, statutory, and punitive damages for a willful violation. *Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316, 317 (5th Cir. 2012); 15 U.S.C. §§ 1681o, 1681n(a). Schultz alleges that HomeBridge willfully or negligently violated § 1681s-2(b) of the FCRA.

### 1. Willful Violation

"Only defendants who engaged in willful misrepresentations or concealments have committed a willful violation . . . under § 1681n." *Stevenson v. TRW Inc.*, 987 F.2d 288, 294 (5th Cir. 1993) (internal quotations

omitted).    A defendant acts willfully by "knowingly and intentionally commit[ting] an act in conscious disregard for the rights of others," "typically misrepresent[ing] or conceal[ing] . . . a credit report from a consumer." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001) (citation omitted); *see also Cameron v. Greater New Orleans Federal Credit Union*, 713 F. App'x 238, 240 (5th Cir. 2018). "Reckless disregard" of the FCRA also "qualif[ies] as a willful violation within . . . § 1681n(a)." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71, 127 S. Ct. 2201, 2216 (2007). However, a defendant does not act willfully by simply "fail[ing] to investigate adequately and fail[ing] to correct inaccurate information in the plaintiff's credit report." *Stevenson*, 987 F.2d at 294.

Schultz has not pled sufficient facts to support a willful violation claim.    First, Schultz alleges that HomeBridge "failed to correct its inaccurate information" while it was "technically in possession of [her] payment."  This is little more than a headnote for the entire dispute and does not show willful misrepresentation, concealment, or a reckless disregard for Schultz's rights.  Second, Schultz points to HomeBridge's failure to contact her or verify that the initial refund check had been negotiated.  This second allegation, while perhaps indicative of poor customer service, is far from a reckless disregard of the FCRA.  As the Supreme Court noted in *Safeco Ins. Co.*, "conduct . . . in reckless disregard" must carry "*substantially* greater [risk of harm] than that which is necessary to make his conduct negligent." 551 U.S. at 69, 127 S. Ct. at 2215 (quoting Restatement (Second) of Torts § 500, p. 587 (1963–1964)).

Further, liability under the FCRA attaches only *after* the furnisher of credit information has received notice of a dispute from a credit reporting agency, and Schultz did not submit a written dispute with these agencies until January 10, 2021.    *See* 15 U.S.C. § 1681s-2(b)(1) ("After receiving notice . . . of a dispute with regard to the completeness or accuracy of any

information provided by a person to a consumer reporting agency, the person shall—"). The initial refund check was purportedly issued sometime after August 26, 2020, the mortgage was paid in full on October 8, 2020, and HomeBridge sent the final overpayment refund check on November 3, 2020. Any claim that HomeBridge violated the FCRA by its lack of due diligence surrounding the execution or negotiation of the refund check fails because FCRA liability did not attach until January 10, 2021, at the earliest.

### 2. Negligence and Actual Damages

To prevail on her negligence claim, Schultz must plead actual damages. *See Smith*, 703 F.3d at 318; 15 U.S.C. § 1681o(a)(1). Schultz claims that she suffered actual damages in a "higher interest rate" on her new mortgage and "emotional distress."

The district court found that the causal connection between the claimed damages and the conduct in the complaint was insufficient, and that "all the pleaded damages resulted from . . . conduct that preceded the date liability could be imposed." Indeed, in proving actual damages, "[e]ach element of damage must be linked to [defendant's] failure to comply with its FCRA obligations." *Morris v. Trans Union LLC*, 420 F. Supp. 2d 733, 738 (S.D. Tex. 2006), *affirmed* 224 F. App'x 415 (5th Cir. 2007).

In response to her efforts to correct the reporting, HomeBridge allegedly assured Schultz that the payment issue would be "taken care of" and the credit reporting would "get corrected." While she was trying to finance the Texas Property, HomeBridge allegedly "confirmed . . . that Ms. Schultz was never 30 days late." Underscoring these assurances, HomeBridge issued Schultz a refund check in November 2020 for an extra monthly payment after the mortgage was "paid in full" on October 8, 2020. If Schultz was thirty days late on her October 2020 payment, as HomeBridge

was still reporting in early 2021, which payment was refunded to her in November?

Accepting Schultz's well pled facts as true, HomeBridge's failure to investigate and correct this inaccurate reporting between January 2021 and March 2021 plausibly caused the claimed damages surrounding the March 2021 financing application. Schultz disputed HomeBridge's reporting with credit agencies on January 10, 2021, and, to her knowledge, the credit agencies notified HomeBridge.[2] At that point, HomeBridge was obliged to take investigatory and corrective action within the timeframe outlined in 15 U.S.C. § 1681i(a)(1). *See* 15 U.S.C. §1681s-2(b)(2). Instead, HomeBridge continued to report that Schultz was late on her October 2020 payment through March 2021, when Schultz eventually purchased a Texas home. HomeBridge's conduct prior to Schultz's written dispute may have caused the late payments to appear on her credit report, but HomeBridge's alleged negligence *after* the dispute plausibly kept it there.

## B. Texas Debt Collection Act

Schultz's amended complaint also alleges that HomeBridge violated the TDCA by "misrepresenting the character, extent, or amount of [her] debt" and "using false representations or deceptive means to collect a debt or obtain information." Tex. Fin. Code §§ 392.304(a)(8), (19).

TDCA claims are subject to a two-year statute of limitations. *See Clark v. Deutsche Bank Nat'l Trust Co.*, 719 F. App'x 341, 343 (5th Cir. 2018). Schultz's TDCA claims point to various alleged misrepresentations by HomeBridge that occurred between August and November 2020. The

---

[2] Credit reporting agencies are required to notify furnishers of written disputes within five business days of the date on which the agency receives notice of the dispute. *See* 15 U.S.C. § 1681i(a)(2).

claims were first filed on February 17, 2023, in Schultz's first amended complaint. Unless the claims relate back to the original complaint, filed on September 28, 2021, they are time-barred.

FED. R. CIV. P. 15(c)(1)(B) provides that a claim in an amended complaint relates back to the original pleading when it "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]" Whether the opposing party to the amended complaint had notice is "critical" to the relation-back inquiry. *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985).

The district court dismissed the TDCA claims because the "original complaint entirely revolves around her credit reporting and includes no allegation regarding improper attempts to collect a debt." We agree. Rather than simply adding sources of damages based on HomeBridge's reporting, the TDCA claims raised a new theory of deceptive debt collection, with new facts to support it. The district court correctly concluded that the TDCA claims do not relate back to the allegations pled in the original complaint, and properly dismissed the claims as time-barred.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the dismissal of the willful FCRA claim and TDCA claims, REVERSE the dismissal of the negligent FCRA claim, and REMAND for further proceedings.