**Nina J. THOMAS, Plaintiff,**

v.

**GULF COAST CREDIT SERVICES, INC., et al., Defendants.**

**Civil Action No. 01–D–1313–S.**

United States District Court, M.D. Alabama, Southern Division.

July 22, 2002.

---

Stuart F. Vargo, Stephen D. Heninger, Heninger Burge Vargo & Davis, Birmingham, AL, for Nina J. Thomas.

Stephen E. Whitehead, Laura Catherine Nettles, Jeffrey Neal Cotney, Lloyd, Gray & Whitehead, P.C., Birmingham, AL, George A. Tonsmeire, Mobile, AL, Davis Arthur Barlow, Davis A. Barlow, LLC, Birmingham, AL, for Gulf Coast Credit Services.

Robert A. Huffaker, R. Austin Huffaker, Jr., Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, AL, Bruce S. Luckman, Mark E. Kogan, Timothy P. Creech, Satzberg, Trichon, Kogan & Wertheimer, PC, Philadelphia, PA, for Trans Union Consumer Services, L.L.C.

Paul M. James, Rushton, Stakely, Johnston & Garrett, P.A., Lewis P. Perling, Kilpatrick & Stockton, LLP, Atlanta, GA, for Equifax Credit Information Services.

Jana K. Limer, Jones, Day, Reavis & Pogue, Dallas, TX, for Experian Information Solutions, Inc.

### MEMORANDUM OPINION AND ORDER

De MENT, Senior District Judge.

Before the court are four Motions For Summary Judgment, each filed by a different Defendant on June 3, 2002.[1] (Doc. Nos.40, 42, 45, 46.) Plaintiff Nina J. Thomas filed a single response to the four Motions on July 1 (Doc. No. 55), to which Defendants filed separate Reply Briefs on July 9.[2] (Doc. Nos.56–59.) After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that the Motions For Summary Judgment filed by Experian, Gulf Coast, and Trans Union are due to be granted, and the Motion filed by Equifax is due to be granted in part and denied in part.

### I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1367. The Parties do not contest personal jurisdiction or venue.

---

1. In no particular order, these Defendants are Gulf Coast Credit Services, Inc. ("Gulf Coast"), Trans Union Consumer Services L.L.C. ("Trans Union"), Equifax Credit Information Services ("Equifax"), and Experian Information Solutions, Inc. ("Experian")

2. Accompanying Trans Union's Brief is a Motion To Supplement the record. (Doc. No. 59.) As the court finds that Trans Union's proposed supplementation would not alter the court's analysis, said Motion is due to be denied as moot.

## II. SUMMARY JUDGMENT STANDARD

When a party moves for summary judgment, the court construes the evidence and makes factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). At this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

This determination involves applying substantive law to the pertinent facts that have been developed. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation to the evidence presented. *See id.* at 248, 106 S.Ct. 2505; *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. If this task is satisfied, the burden then shifts to the non-moving party, which must designate specific facts remaining for trial and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Judgment will be granted when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *See id.* at 587, 106 S.Ct. 1348.

## III. FACTUAL BACKGROUND

Plaintiff is the victim of identity theft. (Thomas Dep. at 54.) It seems that a Texas woman assuming the name Nina Thomas–Gines has opened dozens of credit accounts by fraudulently using Plaintiff's name and social security number. (*Id.* at 95; Resp. Ex. B:006.) Plaintiff unsuccessfully sought relief from various state and federal law enforcement agencies in Texas and Alabama. (Thomas Dep. at 87–97.) The present discussion focuses on the extent to which the Fair Credit Reporting Act, codified at 15 U.S.C. § 1681–1681u, can provide a vehicle for redress for those unfortunate individuals finding themselves in a situation similar to Plaintiff. Specifically, Plaintiff has filed the instant lawsuit against Defendants, all of whom are consumer reporting agencies within the meaning of 15 U.S.C. § 1681a(f) and, therefore, are subject to the FCRA. Plaintiff alleges that Defendants have been remiss-indeed, that they have acted willfully-in permitting Ms. Gines to mar Plaintiff's credit history.[3] (Compl.¶¶ 7–24.) The court must determine whether the following facts raise a jury issue under the FCRA.

Plaintiff's problems began in January of 2000, while she was shopping at Victoria's Secret. (Thomas Dep. at 48.) The sales clerk used the offer of free merchandise to entice Plaintiff into applying for a Victoria Secret's credit card. (*Id.*) However, the clerk was unable to obtain the usual instant credit approval, so she advised Plaintiff that a letter of approval would arrive in the mail within two weeks time. (*Id.* at

---

**3.** Plaintiff also alleged several claims arising under the common law of Alabama. (Compl.¶¶ 25–35.) She has conceded, however, that summary judgment is appropriate on such claims, so no further discussion is needed in this regard. (Doc. No. 55 at 39.)

83.) While a letter did arrive on January 23, it stated that Plaintiff was denied the credit card given the excessive number of credit applications and delinquencies appearing on her credit report. (Mot.Ex. 8.) The letter noted that the bank relied upon a credit report provided to it by Equifax, and it briefly advised Plaintiff of her rights under the FCRA. (*Id.*) Heeding that advice, Plaintiff telephoned Equifax, whereupon she was encouraged to likewise contact Trans Union and Experian. (Thomas Dep. at 49–50.) Plaintiff subsequently received the information pertaining to her credit history that each Defendant possessed.[4] (*Id.* at 50–51.)

Although many months passed before Plaintiff would deduce that she was the victim of identity theft (*id.* at 94–95), it was plain that Defendants maintained files on Plaintiff that were not accurate. In addition to the extensive negative credit information, Plaintiff's files included incorrect personal data pertaining to birth dates, names, former addresses, employment histories, and even the name of Plaintiff's spouse. (Resp.Exs.A:001, B:001, C:001.) Thus began a tedious bout of communication between Plaintiff and Defendants aimed at expunging the disputed information from Plaintiff's credit record. (Resp. at 4–20.) Plaintiff has abundantly detailed the protracted exchanges in her Response Brief, and Defendants do not object to her characterization of events. However,

while such facts are not disputed, their materiality is limited such that the court will preserve resources by reserving discussion until the time is appropriate. For present purposes, it is sufficient to note that during the time relevant to the present lawsuit Plaintiff contacted Experian on eleven occasions, Equifax on nine occasions, Trans Union on four occasions, and Gulf Coast on five occasions. (*Id.*) No Defendant completely removed the fraudulent information from Plaintiff's files within the year that she first contacted them. (*Id.*)

During this time, other than the Victoria's Secret incident, Plaintiff was denied a consumer credit application on just one instance.[5] (Mot.Ex. 9.) Again, the stated reason for this denial was that her credit report showed delinquent obligations. (*Id.*) This lender, Regions Bank, relied upon credit reports provided by Equifax as well as by Trans Union. (*Id.*) However, Ted Gashaw, the officer responsible for denying Plaintiff's credit application (*id.*; Gashaw Aff. ¶ 4), has offered testimony noting that the score provided by Trans Union was high enough that, were it the only credit report relied upon, the bank would have extended credit to Plaintiff. (Gashaw Aff. ¶¶ 3–6.)

Over the course of the two-year ordeal, Plaintiff exerted a great deal of time and energy trying to repair the damage to her

---

4. The parties have provided little clarification, but apparently Trans Union purchased Gulf Coast on August 25, 2000. (Corley Aff. ¶ 2.) However, although Plaintiff testified that she initially requested information from Trans Union in January of 2000 (Thomas Dep. at 50), curiously it was Gulf Coast who responded. (Resp.Ex. C:009,011.) This might suggest that a de facto interrelation of operations pre-dated the sale of stock, or perhaps that Plaintiff's retrospective testimony was shaped by the intervening events. Regardless, it is not clear to the court why Trans Union and Gulf Coast are treated as separate Defen-

dants, there being no indication that Plaintiff ever contacted both contemporaneously.

5. Plaintiff was also denied a mortgage application (Mot.Ex. 10), but she acknowledges that she sought credit for investment purposes, rather than for consumer purposes, and thus such a denial is not covered by the FCRA. (Resp. at 20–21.) Therefore, the court will not discuss this issue further, which is why Trans Union's Motion To Supplement is denied as moot. *See* supra note 2.

credit reputation. (Thomas Dep. at 266–67.) The efforts left her "totally exhausted," and she suffered a great deal of stress and anxiety. (*Id.*) Indeed, she claims that the stress caused her complexion to suffer, and that her sleep was disrupted by dreams about the ordeal. (*Id.* at 266–76.) Adding to the stress was the occasional telephone call from debt management companies and collection agencies. (*Id.* at 59–61, 67–68, 80, 266.) However, there is nothing in the record directly linking any of these calls to any credit reports issued by Defendants, beyond the fact that one collection agency, Sagres, received a credit report from Trans Union on one occasion. (*Id.;* Resp. Ex. D:042.)

## IV. DISCUSSION

Although Plaintiff initially alleged that Defendants violated a number of FCRA provisions (Compl.¶¶ 7–24), she has since conceded that she effectively seeks relief pursuant to two statutory provisions. (Resp. at 39.) First, Plaintiff alleges that Defendants violated § 1681e(b) of the FCRA. Section 1681e(b) imposes a duty on consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy when issuing credit reports. Here, Plaintiff alleges that Defendants did not have in place such reasonable procedures and subsequently issued inaccurate reports that injured Plaintiff. Second, Plaintiff contends that Defendants violated § 1681i of the FCRA, which imposes a duty on consumer reporting agencies to reinvestigate reported disputes. According to Plaintiff, even though she contacted Defendants on numerous occasions to dispute the inaccurate information, Defendants negligently or willfully failed to correct the adverse information.

Defendants have offered three general arguments in support of summary judgment: first, they contend that Plaintiff cannot prove a causal link between their alleged misfeasances and any harm she suffered; next, they contend that Plaintiff has not suffered any legally cognizable damages; finally, Defendants contend that, even if the court disagrees as to the two previous contentions, there is no jury question as to punitive damages. The court will address each theory of liability in turn, and then it will address whether punitive damages are appropriate.

### A. Plaintiff's § 1681e(b) Claims

■ Defendants rightly do not dispute that the information they possessed pertaining to Plaintiff's credit history was not correct. Under the FCRA, a consumer reporting agency is required to "follow reasonable procedures to assure maximum possible accuracy" of such information whenever it "prepares a consumer report." 15 U.S.C. § 1681e(b). Notwithstanding Plaintiff's characterizations to the contrary, the volumes of credit information Defendants relayed to Plaintiff do not constitute "consumer reports" under the FCRA. *See Renninger v. ChexSystems,* No. 98–C–669, 1998 WL 295497, *1–6, 1998 U.S. Dist. LEXIS 8528, at *13–17 (N.D.Ill. May 22, 1998); *see also Hyde v. Hibernia Nat'l Bank,* 861 F.2d 446, 449 (5th Cir. 1988), *cert. denied* 491 U.S. 910, 109 S.Ct. 3199, 105 L.Ed.2d 706 (1989) ("The statute does not allow suit against the credit agency for creating, possessing, or revealing to a consumer credit files containing erroneous information."). Accordingly, because a prerequisite to a cause of action under § 1681e(b) is "evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information," Plaintiff's claims against Experian and Gulf Coast fail as a matter of law. *Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir.1991); *see also Washington v. CSC Credit Servs., Inc.,* 199 F.3d 263, 267 (5th Cir.2000) (holding that "the

actionable harm the FCRA envisions is improper disclosure, not the mere risks of improper disclosures").

■ Unlike the latter two Defendants, however, Equifax and Trans Union did provide consumer reports to third parties.[6] Specifically, each provided a report to Regions Bank, thus leading to Regions Bank denying Plaintiff a credit extension. Moreover, Trans Union submitted a report to Sagres, and, of course, Equifax was responsible for the inaccurate report to Victoria's Secret. Although § 1681e(b) "does not make reporting agencies strictly liable for all inaccuracies" conveyed in a consumer report, *id.*, "once a plaintiff demonstrates inaccuracies in a credit report, the burden shifts to the defendant to prove ... the presence of reasonable procedures." *Parker v. Parker*, 124 F.Supp.2d 1216, 1225 (M.D.Ala.2000) (citations omitted). While Trans Union has offered no evidence to support a finding that it utilized reasonable procedures, Equifax has offered the affidavit of Maynard Bryant, an administrator of consumer files at Equifax.[7] (Bryant Aff. ¶ 1.) Bryant asserts that Equifax relies upon reputable and experienced sources of information. (*Id.* at 2.) The court recognizes that, as a general rule, absent reason to doubt the reliability of such sources, a consumer reporting agency acts reasonably by relying upon reputable sources of information. *See, e.g., Henson v. CSC Credit Servs., Inc.,* 29 F.3d 280, 285 (7th Cir.1994) (holding reliance on information is reasonable "absent prior notice that the information may be inaccurate").

■ While such a conclusory affidavit might save a defendant who is not on notice of potential inaccuracies, some additional showing of reasonableness is required when the uncontroverted evidence shows that Plaintiff questioned the reliability if Defendants' information sources. *See Philbin v. Trans Union Corp.,* 101 F.3d 957, 965–66 (3rd Cir.1996); *see also Bryant v. TRW, Inc.,* 689 F.2d 72, 77–78 (6th Cir.1982). Equifax (and Trans Union through the purchase of Gulf Coast) was on notice of disputed information in Plaintiff's file long before submitting a credit report to Regions Bank, yet inaccurate information still was conveyed. It is not entirely clear to the court what either Defendant could have done to eradicate the faulty information in Plaintiff's files after it was notified. It may well be that consumer reporting agencies are not in a proper position to adequately determine the reliability of secondary sources, particularly when each such source offers the same information about a victim of identity theft. On the other hand, blind reliance upon

---

6. While Equifax blanketly asserts that Plaintiff has abandoned any damages claims based upon these denials (Doc. No. 58 at 3), a cursory examination of Plaintiff's Response Brief reveals the contrary to be true. (Doc. No. 55 at 20–21, 33.)

7. Equifax technically does not present such an argument until its Reply brief. (Doc. No. 58 at 1–2.) While Plaintiff characterizes Equifax's Motion as one for partial summary judgment only (Doc. No. 55 at 22–23, 28), Equifax insists that it has joined in the other Defendants' Motions. (Doc. No. 49.) Whatever the legal effect of such a joinder might be (notably Plaintiff does not object thereto),

only Trans Union's Motion comes close to presenting an argument of reasonableness per se. (Doc. No. 47 at 13–14.) However, this argument is offered in the context of different facts, citing case law which arguably supports the denial of summary judgment as to Equifax. (*Id.*) Indeed, the court's reluctance to entertain such a move on Equifax's part is countered only by Plaintiff's refusal to acknowledge the existence thereof. Because the court finds summary judgment to be inappropriate, it is only in the interest of framing the issues for trial that the court explores the issues not fully briefed in the volumes of pleadings under submission.

such sources in the face of repeated consumer disputes is not reasonable. The proper test in this regard weighs "the potential harm of inaccuracy against the burden of safeguarding against such inaccuracy." *Parker*, 124 F.Supp.2d at 1225. Absent sufficient evidence with which to engage in such an analysis, the court cannot conclude as a matter of law that Equifax or Trans Union acted reasonably after Plaintiff disputed the inaccurate information.

Of course, the FCRA's enforcement mechanisms permit relief only upon a showing that Plaintiff suffered damages as a result of Defendants' actions. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 369 (5th Cir.2001). Plaintiff does not dispute that Regions Bank would have approved her credit application had it relied only upon Trans Union's report. As such, Plaintiff cannot prove she suffered any pecuniary damages stemming from Trans Union's conduct. *See Cahlin*, 936 F.2d at 1160–61 (holding that a plaintiff's damages claim fails when he or she cannot prove that credit denial was caused by a defendant).

■■■ Granted, the denial of a credit opportunity is not a prerequisite to a damages claim under the FCRA; Plaintiff may proceed upon showing that Trans Union caused her to suffer emotional damages. *See, e.g., Stevenson v. TRW, Inc.*, 987 F.2d 288, 296 (5th Cir.1993). Indeed, Plaintiff claims that she felt emotional distress arising from her worry that bad credit reports would affect future credit approvals. (Thomas Dep. at 69–70.) However, at the

time Plaintiff felt this distress, she did not know whether Trans Union had supplied erroneous information to any potential lender. Because that information would not have prevented her from credit approval, it would be incongruous to attribute the distress to Trans Union. *See Cousin*, 246 F.3d at 370. Accordingly, summary judgment is due to be granted as to Plaintiff's § 1681e(b) claim against Trans Union.[8]

■■■ Similarly, Equifax contends that the court should grant partial summary judgment on the issue of the emotional damages Plaintiff has suffered. While the Eleventh Circuit has yet to rule on the issue in the FCRA context, its recent discussion of emotional distress claims persuades the court that Plaintiff is required to show some objective physical manifestation of the distress she suffered. *See Jones v. CSX Transp.*, 287 F.3d 1341, 1348 (11th Cir.2002) ("With regard to the requirement that a plaintiff demonstrate objective manifestations of his [or her] emotional distress, [the theory for which damages are sought] seems unimportant."). Plaintiff has offered evidence showing that her complexion suffered as a result of stress, and that a change in her demeanor was apparent based on her interactions with her family. (H. Thomas Aff. ¶ 2.) While Equifax complains that such evidence should be discounted as "conclusory," the court finds that it would be premature to conclude as a matter of law that Plaintiff's evidence fails. *See Riley v. Equifax Credit Info. Servs., Inc.*,

8. The fact that Plaintiff felt upset about a telephone call she received from the same collection agency that received a credit report from Trans Union does not raise a jury issue in this regard. First of all, there is nothing in the record indicating the accuracy of the information relayed to Sagres. Second, only speculation can link the report to the telephone call, there being no evidence as to the time frame of the call. Finally, the court does not believe the frustration experienced by an unsolicited telephone call is the type of emotional distress envisioned by the FCRA's definition of actual damages. *See, e.g., Cousin*, 246 F.3d at 370–71.

194 F.Supp.2d 1239, 1245 (S.D.Ala.2002) (noting that surrounding circumstances, including "the observations of others" should be considered when evaluating an emotional distress claim under the FCRA). Plaintiff was twice denied credit due to reports issued by Equifax. Notwithstanding Plaintiff's continual efforts to clear her name, Equifax did not immediately abide. While Equifax has pointed to other possible sources from which Plaintiff's stress arose, causation is a question of fact whose argument to a jury should not be precluded at this stage. Should a jury find Equifax's procedures to be unreasonable, it is certainly possible that it likewise would find such unreasonableness to have caused objective manifestations of emotional distress.[9]

### B. Plaintiff's § 1681i Claims

Plaintiff asserts that Defendants are liable under § 1681i because Defendants failed to reinvestigate and correct erroneous information contained in Plaintiff's files. Section 1681i(a)(1)(A) provides, in pertinent part:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file ... before the end of the 30–day period beginning on the date on which the

agency receives notice of the dispute from the consumer.

15 U.S.C. § 1681i(a)(1)(A). Defendants do not dispute that Plaintiff notified them of a dispute in accordance with § 1681i(a). Rather, as with Plaintiff's § 1681e(b) claim, Defendants contest the causation issue. Absent evidence linking any alleged failure to reinvestigate with actual damages, Defendants contend that Plaintiff's claim fails as a matter of law. The same arguments are offered in this regard as those presented as to Plaintiff's § 1681e(b) claims. As will be discussed, the court is persuaded by such arguments, and the same outcomes reached as to Plaintiff's § 1681e(b) claims are due presently.

The Eleventh Circuit has held that a § 1681i(a) "claim is properly raised when a particular credit report contains a factual deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry." Cahlin, 936 F.2d at 1160. Unlike with § 1681e(b), there is no statutory basis for interpreting Cahlin as requiring the actual issuance of a consumer credit report under this cause of action; indeed, § 1681i(a) explicitly extends coverage to inaccuracies extant within "a consumer's file at a consumer reporting agency." 15 U.S.C. § 1681i(a)(1)(A).

■ That said, the FCRA permits consumer reporting agencies two options: to either delete the disputed information or to record the status of the reinvestigation.

---

**9.** It is worth noting that the court sees no incoherency in permitting a jury to attribute Plaintiff's emotional distress solely to Equifax even though she engaged in repeated stressful exchanges with each Defendant. As discussed supra, liability under the FCRA attaches upon the issuance of an inaccurate credit report that was prepared by unreasonable means. In the absence of such an issuance, there obviously can be no showing of

unreasonable preparation procedures. The emotional damages claim, in turn, would have to rest upon the mere worry that an inaccurate report would be issued in the future, a speculative endeavor generally deemed insufficient to support a finding of emotional damages. See, e.g., Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 475 (2nd Cir.1995), cert. denied, 517 U.S. 1150, 116 S.Ct. 1452, 134 L.Ed.2d 571 (1996).

*Id.* The emphasis, then, is placed upon minimizing the risk that a consumer suffer prejudice due to arguably inaccurate information. Absent indication that Experian or Gulf Coast forwarded *any* information about Plaintiff, it stands to reason that Plaintiff cannot assert a claim for damages against said Defendants. Indeed, because *Cahlin* requires "evidence tending to show that [Plaintiff] was damaged as a result of an allegedly inaccurate [Trans Union] report," Plaintiff's claim against Trans Union likewise fails for the reasons discussed in the context of Plaintiff's § 1681e(b) claims. 936 F.2d at 1160–61; *see also Field v. Trans Union LLC*, No. 01–C–6398, 2002 WL 849589, *6 n. 2, 2002 U.S. Dist. LEXIS 7973, at *20 n. 2 (N.D.Ill. May 3, 2002) ("Because Field fails to proffer evidence of actual damages to support her § 1681o claims, CSC's argument that it conducted reasonable reinvestigation under § 1681i is moot.").

Equifax, however, did issue two credit reports that caused Plaintiff to suffer damages, one of which was issued after Plaintiff disputed the information in her file. Equifax does not dispute that it was required by statute to record the status of the disputed information and that, if the information was proven inaccurate or unverifiable, it was due to be deleted. 15 U.S.C. §§ 1681i(a)(1)(A); 1681i(a)(5). Again Equiax offers the vague Bryant Affidavit to show that, upon notification of the disputed information, Equifax "conducted reinvestigations per its established procedures." (Bryant Aff. ¶ 3.) In so doing, it "either deleted disputed accounts or verified the accounts with the creditors." (*Id.*) Notably, the standard to which courts hold consumer reporting agencies in this regard is not as high as under § 1681e(b)

wherein procedures should aim at maximum possible accuracy. *See Yelder v. Credit Bureau of Montgomery, L.L.C.*, 131 F.Supp.2d 1275, 1281 (M.D.Ala.2001).

Nonetheless, the issue remains one of reasonableness, i.e., whether Equifax made "reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin*, 936 F.2d at 1160.[10] Reasonableness, of course, is a question of fact guided by an examination of the method by which a consumer notified a credit agency of a dispute, as well as by balancing the cost of verifying the information with the possible harm of reporting inaccurate information. *Bruce v. First U.S.A. Bank, N.A.*, 103 F.Supp.2d 1135, 1143 (E.D.Mo.2000). While Equifax asserts for the first time in its Reply brief that the reasonableness of its investigation is a defense to Plaintiff's § 1681i claim (Doc. No. 58 at 3), it offers no evidence supporting the reasonableness thereof. Moreover, it conveniently overlooks the fact that the cases upon which it relies note "[t]he reasonable procedures defense creates a jury question." *Thomas v. Trans Union, L.L.C.*, 197 F.Supp.2d 1233, 1237 (D.Or.2002); *Bruce* 103 F.Supp.2d at 1143 ("Whether a reasonable investigation has been conducted is generally a question of fact for the jury.").

As with Plaintiff's § 1681e(b) claim, the court cannot examine the reasonableness of Equifax's procedures without any evidence supporting a conclusion one way or the other. Plaintiff has shown that she voiced numerous complaints about the accuracy of her files, yet Equifax continued to release damaging information. Again, it very well may be the case that cost prohibitive investigations render consumer reporting agencies practicably impotent in

---

**10.** The court takes this opportunity to point out that, in all likelihood, it will draft jury charges based upon the thoughtful analysis in *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F.Supp. 972 (M.D.Fla.1985), a case decided within the Eleventh Circuit.

the face of the identity theft phenomenon. Equifax has presented insufficient evidence to demonstrate as much, however, so the court cannot conclude that, as a matter of law, it reasonably reinvestigated Plaintiff's disputes. As such, the court cannot grant summary judgment on the issue of whether Plaintiff's damages ensued from Equifax's failure to reasonably act.[11]

### C. Punitive Damages

 Thus far the court has implicitly proceeded under 15 U.S.C. § 1681o, the enforcement mechanism for claims alleging negligent violations of the FCRA. However, Plaintiff also is entitled to punitive damages pursuant to 15 U.S.C. § 1681n upon a showing that a consumer reporting agency willfully failed to follow the FCRA's requirements. *E.g., Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986). The negligence discussion focused on the causal link between unreasonable procedures and actual damages. That the court found scant evidence supporting such a link as to Defendants Experian, Gulf Coast, and Trans Union does not preclude a finding that said Defendants willfully deviated from FCRA requirements. *See Yohay v. Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987) ("The award of punitive damages in the absence of any actual damages, in an appropriate case, comports with the underlying deterrent purpose of the FCRA."). However, as will be discussed, Plaintiff has presented insufficient evidence from which a jury could infer that any Defendant acted willfully.

"To be found in willful noncompliance, a defendant must have 'knowingly and intentionally committed an act in conscious dis-

regard for the rights of others.' Although malice or evil motive is not necessary to satisfy § 1681n, there must have been a willful violation." *Stevenson*, 987 F.2d at 294 (citations omitted). Notably, the Fifth Circuit has pointed out that in "each case where punitive damages have been allowed the defendant's conduct involved willful misrepresentations or concealment." *Pinner*, 805 F.2d at 1262. Plaintiff has presented no evidence that Defendants concealed information from her, or that they misrepresented the status of her files. Indeed, the record indicates that Defendants maintained a dialogue with Plaintiff, promptly informing her of the progress of the investigations. (Resp. at 3–20.)

It is true that the ongoing dialogue failed to produce immediate eradication of inaccurate information from Plaintiff's files. (*Id.*) Indeed, Plaintiff argues that this fact alone supports a jury finding of willful noncompliance. (*Id.* at 36–39.) However, courts have found that analogous circumstances did not raise a jury issue of willfulness absent some indication that the reporting agencies "knowingly and intentionally" acted with "conscious disregard" for Plaintiff's rights. *Philbin*, 101 F.3d at 970; *see also Cousin*, 246 F.3d at 374; *Casella*, 56 F.3d at 476. No such evidence is before the court. To the contrary, Defendants have offered evidence tending to show that they made efforts to ameliorate Plaintiff's problems upon notification thereof. (Bryant Aff. ¶¶ 3–4; Corley Aff. ¶ 5; Strawther Aff. ¶¶ 10–13.) She has offered no evidence as to the flaws in the steps taken by Defendants. Whatever the errors accompanying these steps demonstrate with regard to Defendants' general negligence, Plaintiff simply has presented insufficient evidence from which a jury

---

**11.** The damages analysis in the court's § 1681e(b) discussion equally applies to Plaintiff's § 1681i claim against Equifax.

might infer willfulness. Accordingly, summary judgment is due on each of Plaintiff's claims brought pursuant to § 1681n.[12]

## V. ORDER

For the foregoing reasons it is CONSIDERED and ORDERED that Defendant Trans Union's Motion To Supplement (Doc. No. 59) be and the same is hereby DENIED AS MOOT. It is further CONSIDERED and ORDERED as follows:

(1) Defendant Equifax's Motion For Summary Judgment (Doc. No. 40) be and the same is hereby GRANTED in part and DENIED in part such that only Plaintiff's § 1681e(b) and § 1681i(a) claims brought pursuant to 15 U.S.C. § 1681o may proceed to trial;

(2) Defendant Gulf Coast's Motion For Summary Judgment (Doc. No. 42) be and the same is hereby GRANTED in all respects;

(3) Defendant Experian's Motion For Summary Judgment (Doc. No. 45) be and the same is hereby GRANTED in all respects;

(4) Defendant Trans Union's Motion For Summary Judgment (Doc. No. 46) be and the same is hereby GRANTED in all respects.

---

12. Plaintiff resorts a Memorandum Opinion and Order previously entered by the court which found a jury issue of willfulness after the plaintiff contacted the reporting agency on numerous occasions to no avail. *Thompson v. Equifax*, 00–D–1468–S (M.D. Ala. filed Nov. 14, 2001). In that case, however, there was undisputed evidence that the reporting agency knew that the credit report was inaccurate. (*Id.* at 3–6, 26) The FCRA does not require removal of all disputed information, just that which is proven inaccurate or unverifiable. Plaintiff did not learn that she was the victim of identity theft until after she was denied credit. There is no evidence that Defendants had access to such information any sooner.