Dale R. ACTON, Plaintiff,

v.

**BANK ONE CORPORATION; Bank One Arizona N.A.; Equifax Credit Information Services, Inc., Defendants.**

No. 01–0738–PHX–DGC.

United States District Court,
D. Arizona.

Nov. 7, 2003.

David Szwak, Esq., Shreveport, LA, and Floyd Bybee, Esq., Tempe, AZ, for Plaintiff, Dale R. Acton.

Lewis Perling, Esq., Atlanta, GA, for defendant, Equifax Information Services, LLC.

Michael Plati, Esq., Phoenix, AZ, for Bank One [Arizona], N.A.

## ORDER

CAMPBELL, District Judge.

Plaintiff Dale Acton alleges that Defendants Bank One Corporation and Bank One Arizona N.A. (collectively "Bank One") and Equifax Credit Information Services, Inc. ("Equifax") violated provisions of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (the "FCRA"). At a hearing held on October 21, 2003, the Court granted Bank One's motion for summary judgment for reasons stated on the record. The Court took under advisement Equifax's motion for summary judgment dated May 28, 2003 and Plaintiff's motion to supplement his response dated July 8, 2003. The Court will grant in part and deny in part Equifax's motion for summary judgment and dispose of the remaining motion.

## I. BACKGROUND.

In November 1998, Plaintiff entered into a contract to purchase a new home being built by Coventry Homes (the "Coventry Home"). Plaintiff applied and pre-qualified for a loan to finance the purchase through a mortgage broker, Don Smith. A few months later, on April 20, 1999, Mr. Smith obtained a credit report on Plaintiff that contained information from three credit agencies—Equifax, Experian, and Trans Union. The April 20, 1999 report contained unfavorable information regarding Plaintiff's credit account with Bank One, specifically that Plaintiff had made late payments through the end of 1998 and early 1999 and had filed for bankruptcy. The information was false.

Plaintiff wrote to Equifax on April 30, 1999 and formally complained about the inaccurate credit report. His letter requested that the report be corrected. Plaintiff sent similar letters to Experian and Trans Union.

In response to Plaintiff's letter and as part of its investigation of the information appearing in Plaintiff's credit report, Equifax sent a consumer dispute verification form ("CDV form") to Bank One on May 7, 1999. Equifax sent Plaintiff a letter on May 10, 1999 informing him that it would complete its investigation within 30 days.

Bank One sent the completed CDV form back to Equifax on June 3, 1999, noting that Plaintiff was not in bankruptcy and did not have any delinquencies on his account. The next day, June 4, 1999, Equifax sent a letter to Plaintiff stating that the investigation was complete and the Bank One item would be deleted from his credit file.

On July 14, 1999 and September 17, 1999, Plaintiff obtained credit reports which contained information from Equifax, Experian, and Trans Union. The credit reports still contained erroneous information regarding Plaintiff's Bank One account. Plaintiff filed a complaint against Bank One on April 25, 2001 seeking actual, statutory, and punitive damages for violation of the FCRA. Plaintiff amended the complaint on June 4, 2001 to add Equifax as a defendant.

## II. THE FAIR CREDIT REPORTING ACT.

 "The purpose of the FCRA is to assure consumers that reporting agencies use reasonable procedures for collecting, using, and disseminating information. 15 U.S.C.A. § 1681(b). Section 1681e of the Act sets out the requirements that an agency should follow in preparing a report, while § 1681i outlines the procedures an agency should follow after a credit report is completed. Under § 1681i, if a consumer disputes the completeness or accuracy of any item of information after a report is prepared, the consumer reporting agency is required to reinvestigate and record the current status of that information." *Williams v. Colonial Bank*, 826 F.Supp. 415, 417–18 (M.D.Ala.1993), *aff'd*, 29 F.3d 641 (11th Cir.1984). "The FCRA provides for compensation in the form of actual damages and attorneys' fees if a consumer reporting agency negligently fails to comply with any provision of the FCRA. The FCRA also permits a consumer to recover punitive damages if the defendant's non-

compliance with the Act was willful." *Natale v. TRW, Inc.*, No. 97–3661, 1999 WL 179678, at *1 (N.D.Cal. Mar. 30, 1999) (citations omitted). *See also* 15 U.S.C. §§ 1681o, 1681n.

## III. THE STATUTE OF LIMITATIONS.

 Plaintiff asserts claims against Equifax under two provisions of the FCRA, § 1681e(b) and § 1681i. Equifax contends that both claims are barred by the statute of limitations found in 15 U.S.C. § 1681p, which provides that a party must bring an action under the FCRA "within two years from the date on which the liability arises[.]" The date on which liability arises depends on which provision allegedly was violated. "Under 15 U.S.C. § 1681e(b), liability arises when the consumer reporting agency issues an inaccurate consumer report. Under 15 U.S.C. § 1681i, liability arises when the consumer reporting agency allegedly violates its duty under the FCRA to reinvestigate." *Barron v. Trans Union Corp.*, 82 F.Supp.2d 1288, 1293 (M.D.Ala.2000) (internal quotations, brackets, and citations omitted).

The parties dispute the relevant date for the statute of limitations inquiry. Equifax contends the statute of limitations runs from June 4, 1999, the date of Plaintiff's amended complaint (which added Equifax as a defendant), while Plaintiff contends the statute of limitations runs from April 25, 1999, the date of the original complaint (arguing the amended complaint relates back to the original complaint). The Court finds it is unnecessary to resolve this issue as it does not affect the statute of limitations analysis set forth below.

A. *Plaintiff's Claim Under 15 U.S.C. § 1681e(b).*

 Plaintiff's claim under § 1681e(b) relating to the erroneous credit report

arose on April 20, 1999, the date of the report's issuance. *See id.* Plaintiff was required to file his claim under § 1681e(b) within two years—by April 20, 2001. This is true regardless of when Plaintiff actually received notice of the erroneous report. *See TRW Inc. v. Andrews,* 534 U.S. 19, 28, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (holding the two-year statute of limitations does not incorporate a general discovery rule). Because Plaintiff's original complaint was not filed until April 25, 2001, his claim under § 1681e(b) with regard to the April 20, 1999 credit report is time barred.

■ The Court recognizes that "each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies." *See Whitesides v. Equifax Credit Info. Services, Inc.,* 125 F.Supp.2d 807, 812 (W.D.La.2000) (citing *Hyde v. Hibernia Nat'l Bank in Jefferson Parish,* 861 F.2d 446, 450 (5th Cir.1988)). But Plaintiff has not clearly identified any other claims arising under § 1681e(b). Plaintiff does allege that he personally obtained erroneous credit reports on July 14, 1999 and September 17, 1999. Claims arising from these reports would not be time barred, but the Court will address below whether Plaintiff has identified any damages arising from them.

**B.** *Plaintiff's Claim Under 15 U.S.C. § 1681(i).*

■ Under § 1681(i)(a)(1)(A), a consumer reporting agency must reinvestigate an item in a consumer's credit file after the consumer directly notifies the agency of a possible error. The agency must reinvestigate the disputed item "before the end of the 30–day period beginning on the date on which the agency receives the notice of the dispute from the consumer." 15 U.S.C. § 1681i(a)(1)(a). A claim under § 1681(i) arises when the agency fails to comply with this duty to reinvestigate—i.e., 30 days after it receives notice of the disputed item from the consumer. *See Williams,* 826 F.Supp. at 419.

■ Plaintiff notified Equifax of the disputed Bank One information by letter dated April 30, 1999. The 30–day period for investigating the disputed information would have begun to run when Equifax actually received the letter, but Equifax has provided the Court with no evidence on when the letter actually arrived at its office. Equifax-responded to the letter by sending Bank One a CDV form on May 7, 1999, so the letter must have been received by at least that date. Viewing the evidence in the light most favorable to the Plaintiff, as the Court must do in considering Equifax's motion for summary judgment, the Court concludes that the notice was received by Equifax on May 7, 1999. Equifax thus had a duty to reinvestigate the claim by the 30–day deadline of June 5, 1999, and it is on this day that the two-year statute of limitations began to run, giving the Plaintiff until June 5, 2001 to assert a claim under § 1681i. Because Plaintiff filed his amended complaint on June 4, 2001, the claim under § 1681i is not time barred regardless of whether the amended complaint relates back to the filing of the original complaint.

## IV. THE SECTION 1681i CLAIM.

■ To establish a claim under § 1681i(a) the Plaintiff must establish: (1) he notified Equifax directly of a disputed item in his credit file; (2) Equifax failed to reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file as required by § 1681i(a)(5) within the 30–day period; (3) Equifax's failure to comply with the statute was negligent; (4) Equifax's failure caused the Plaintiff's injury. *See Waggoner v. Trans Union, LLC,* No.

302CV1494G, 2003 WL 22220668, at *9 (N.D.Tex. July 17, 2003) (citation omitted).

 Equifax concedes that the Bank One information was false and should not have appeared on the Plaintiff's credit report. Equifax also concedes that it did not correct the Plaintiff's account as it claimed to have done in its June 4, 1999 letter to Plaintiff informing him that the investigation was complete. Equifax contends, however, that it is not strictly liable for its failure to comply with the FCRA. Rather, Plaintiff must show that Equifax was negligent—that it failed to follow reasonable procedures—before recovering damages under § 1681i. The Court agrees with Equifax, but the reasonableness of Equifax's procedures is a question for the jury to decide.

In *Thomas v. Trans Union, LLC.*, 197 F.Supp.2d 1233, 1238 (D.Or.2002), the district court recognized that § 1681i does not impose strict liability on a credit reporting agency. As with § 1681e(b), the agency can rebut liability by presenting a "reasonable procedures defense." *Id.* "[T]he reasonable procedures defense is designed to protect users of credit information who consistently abide by the law but who, in dealing with hundreds or thousands of instances, ultimately, by commission or omission, inadvertently violate the law in isolated instances." *Id.* at 1237 (internal quotations and citation omitted). The *Thomas* court noted that while it was the first court to apply the reasonable procedures defense in the context of a § 1681i claim, other courts have found that § 1681i requires the court to inquire into the reasonableness of the agency's conduct and procedures. *See id.* ("There is no reason to restrict the reasonable procedures defense to the initial preparation of credit reports, but not permit the defense as to the maintenance of accurate information through the dispute and reinvestigation provisions of section 1681i(a). The

two sections overlap—the reinvestigation process is a part of the agency's duty to maintain accurate credit reports.") (internal quotations and citations omitted). *Accord Thomas v. Gulf Coast Credit Servs., Inc.*, 214 F.Supp.2d 1228, 1237 (M.D.Ala. 2002) (citing *Thomas*, 197 F.Supp.2d at 1237).

 Equifax contends that it followed reasonable procedures in this case. The reasonableness of Equifax's conduct, however, is a question for the jury. *See Thomas*, 197 F.Supp.2d at 1237 ("reasonable procedures defense creates a jury question"). *See also Thomas*, 214 F.Supp.2d at 1237 (reasonableness is a question of fact); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir.1995) (reasonableness will be a jury question "in the overwhelming majority of cases"). The Court will therefore deny Equifax's motion for summary judgment regarding the § 1681i claim.

## V. DAMAGES.

 "A credit reporting agency which negligently fails to comply with a requirement of the FCRA is liable for any actual damages sustained by a consumer. Specifically, a negligent violation of either FCRA § 1681e(b) or FCRA § 1681i(a) subjects a credit reporting agency to liability for any actual damages sustained as a result of the violation, costs of court, and reasonable attorney's fees. A willful violation of § 1681e(b) or § 1681i(a) subjects the credit reporting agency to punitive damages." *Waggoner*, 2003 WL 22220668, at *5 (parentheticals and citations omitted). The Plaintiff "has the burden of proving that his damages were caused by the defendant's violations of the FCRA." *Zala v. Trans Union*, No. 99–CV–0399, 2001 WL 210693, at *6 (N.D.Tex. Jan. 17, 2001) (citation omitted).

Plaintiff alleges that Equifax's failure to properly reinvestigate his dispute pursuant to § 1681i resulted in actual damages including humiliation and mental distress, the inability to purchase a new home or lease a new car, and injury to his reputation and creditworthiness. Equifax contends that Plaintiff cannot prove he sustained any damages.

### A. *The Failed Coventry Home Purchase.*

██ Plaintiff alleges that he was unable to purchase the Coventry Home because of Equifax's wrongful actions. As noted above, Plaintiff's claim for this injury under § 1681e(b) is barred by the statute of limitations. Equifax further argues that Plaintiff cannot recover for the injury under § 1681i because Plaintiff cancelled the Coventry Home contract on May 19, 1999, more than two weeks before Equifax's 30–day reinvestigation period expired on June 5, 1999. The Court agrees. Plaintiff could not have been damaged by Equifax's failure to comply with § 1681i until the 30–day reinvestigation period expired. By that time he had cancelled the Coventry Home purchase. Equifax's failure to reinvestigate did not cause the cancellation.[1]

### B. *The May 1, 1999 Auto Lease.*

██ Plaintiff claims he was unable to lease a new car at a low finance rate on May 1, 1999. The anto dealership's records reveal, however, that it did not examine an Equifax report with regard to that transaction. Plaintiff therefore cannot show that Equifax caused any damages in connection with the car lease.

### C. *Emotional Distress Damages.*

██ Damages recoverable under the FCRA "include humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses" due to a denial of credit. *Stevenson v. TRW Inc.,* 987 F.2d 288, 296 (5th Cir.1993). "Courts have allowed recoveries where ... the plaintiff suffered mental anguish based on events other than a denial of credit." *Zala,* 2001 WL 210693, at *7 (citations omited). *See Guimond,* 45 F.3d at 1333 ("[N]o case has held that a denial of credit is a prerequisite to recovery under the FCRA.").

Plaintiff claims that Equifax's failure to correct his credit report and the continuing hassle to correct the error "devastated" him and his wife. Plaintiff claims he had to take unpaid leave from work so he could deal with the stress of the credit situation, had difficulty sleeping, and was required to take large amounts of Tylenol. Plaintiff also claims that he was embarrassed by the fact that others in the community unjustifiably perceived him and his wife as bankrupt.

Equifax contends that Plaintiff's allegations are insufficient evidence of emotional distress injury. Equifax cites to *Cousin v. Trans Union Corp.,* 246 F.3d 359, 371 (5th Cir.2001), for the proposition that a Plaintiff alleging intangible loss must set forth evidence with "a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award." *Id.* (citations omitted). Other courts have disagreed. *See, e.g., Kronstedt v. Equifax,* 2001 WL 34124783, at *12 (W.D.Wis. Dec. 14, 2001) (distinguishing *Cousin,* recogniz-

---

**1.** Plaintiff told Coventry that he was cancelling the contract because he could not sell his other house. Plaintiff testified in his deposition that this was not true—that he told Coventry this story to avoid forfeiting his earnest money deposit. Whatever the true reason for Plaintiff's cancellation, it cannot be blamed on Equifax's failure to reinvestigate under the FCRA because that performance was not due until more than two weeks after the cancellation.

ing that the Seventh Circuit "has held that the injured party's testimony alone may be sufficient to establish emotional distress, so long as the injured party reasonably and sufficiently explains the circumstances of his injury and does not resort to mere conclusory statements") (internal quotations, brackets, and citations omitted). The *Kronstedt* court concluded that the "evaluation of plaintiff's emotional distress claim is a task best left for the jury[.]" *Id.*

The Ninth Circuit has not addressed the type of evidence necessary to support an award of emotional distress damages under the FCRA, but has stated in other contexts that "[w]hile objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in the Ninth Circuit, or the Supreme Court." *Zhang v. Am. Gem Seafoods, Inc.,* 339 F.3d 1020, 1040 (9th Cir.2003) (holding in a discrimination action that the plaintiff's "testimony alone is enough to substantiate the jury's award of emotional distress damages") (ellipsis and citations omitted). *See also Johnson v. Hale,* 13 F.3d 1351, 1352–53 (9th Cir.1994) (recognizing that "compensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms.").

Equifax also cites to *Price v. City of Charlotte,* 93 F.3d 1241, 1248–54 (4th Cir. 1996), as support for its contention that emotional distress damages must be supported by evidence of genuine injury. The Ninth Circuit stated in *Zhang,* however, that the "holding of *Price* that 'the evidence of the emotional distress must be demonstrable, genuine, and adequately explained,' is not the law of this Circuit[.]" *Zhang,* 339 F.3d at 1040 (citing *Price,* 93 F.3d at 1251). The Court therefore declines to follow *Price* in this case.

While the Plaintiff certainly has not offered overwhelming evidence of emotional distress damages, the evidence is sufficient to create a question for the jury, particularly when all factual disputes and possible inferences are resolved in the Plaintiff's favor. The Court will therefore deny Equifax's motion for summary judgment regarding emotional distress damages.

D. *Other Damages.*

Plaintiff has made a number of generalized statements in his pleadings concerning damages allegedly suffered as a result of Equifax's actions. These include his alleged inability to purchase a home from 1999 until April 2000, the termination of two credit accounts allegedly related to his bad credit, and damages suffered in relation to inaccurate credit reports he obtained on July 14, 1999 and September 17, 1999. Plaintiff has provided the Court with no specific information concerning these alleged injuries, and it is not the Court's duty to search the record for evidence on which to deny summary judgment. *Forsberg v. Pac. N.W. Bell Tel. Co.,* 840 F.2d 1409, 1417–18 (9th Cir.1988). Because Plaintiff has failed to support his generalized allegations of damages with specific evidence, they will be eliminated by summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

E. *Punitive and Statutory Damages.*

Section 1681n provides for the recovery of statutory and punitive dam-

ages for willful noncompliance with the FCRA. *See* 15 U.S.C. § 1681n(a)(1),(2). "Willful noncompliance occurs only when a defendant knowingly and intentionally commits an act in conscious disregard for the rights of others. In other words, the defendant is liable under § 1681n for violating § 1681i only if it engaged in willful misrepresentations or acts of concealment during the reinvestigation process." *Zala,* 2001 WL 210693, at *8 (citations omitted). "Although malice or evil motive is not necessary to satisfy § 1681n, there must have been a willful violation." *Stevenson,* 987 F.2d at 294.

■ Plaintiff has not produced any evidence to show that Equifax's issuance of the original report or subsequent failure to correct the report was anything other than negligent. Plaintiff has produced no evidence that Equifax knowingly or intentionally acted in conscious disregard of the Plaintiff's rights. Because Plaintiff has failed to produce evidence that Equifax's action in this case amounted to willful noncompliance, the Court will grant summary judgment on the punitive and statutory damages claims. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## VI. PLAINTIFF'S PENDING MOTION.

Plaintiff moved on June 25, 2003 to supplement his response and opposition to Bank One's statement of facts and motion for summary judgement. Because the Court considered the supplemental information at the hearing on October 21, 2003, the Plaintiff's motion will be granted even though it has now been rendered moot by the granting of Bank One's motion.

**IT IS ORDERED** that Equifax's motion for summary judgment (Doc. # 49) is **granted** with respect to the Coventry Home purchase, the auto lease, punitive damages, statutory damages, and the other generalized claims of damage, and is

**denied** only with respect to emotional distress damages.

**IT IS FURTHER ORDERED** that Plaintiff's motion to supplement its response and opposition to the statement of facts on Bank One's motion (Doc. # 57) is **granted**.

The Court will enter a separate order setting a final pretrial conference in this case.